1
2
3          **UNITED STATES DISTRICT COURT**
4          **SOUTHERN DISTRICT OF CALIFORNIA**
5

6    HADJIR MASHIRI,                          Case No.:  3:15-cv-2485-H-JLB
7                              Plaintiff,
                                              **ORDER:**
8    v.
9    CALIFORNIA COAST CREDIT                  **(1) GRANTING DEFENDANT BEST**
     UNION; and THE BEST SERVICE CO.,         **SERVICE CO., INC.'S MOTION**
10   INC.,                                    **FOR SUMMARY JUDGMENT,**
                                              **GRANTING IN PART AS TO**
11                           Defendants.      **CALIFORNIA CREDIT UNION,**
12                                            **AND DECLINING SUPPLEMENTAL**
                                              **JURISDICTION OVER REMAINING**
13                                            **CCRAA CLAIM**
14
15                                            [Doc. No. 37]
16
17                                            **(2) DENYING PLAINTIFF'S**
                                              **MOTION FOR SUMMARY**
18                                            **JUDGMENT AND DECLINING**
                                              **SUPPLEMENTAL JURISDICTION**
19                                            **OVER REMAINING CCRAA CLAIM**
20
21                                            [Doc. No.  39]
22
23                                            **(3) DENYING AS MOOT**
                                              **PLAINTIFF'S MOTION TO**
24                                            **EXCLUDE DEFENDANTS' EXPERT**
                                              **EVIDENCE**
25
26
27                                            [Doc. No. 41]
28   ///

1

On November 2, 2015, Plaintiff Hadjir Mashiri, a former bank teller at Wells Fargo, filed suit against Defendants California Coast Credit Union ("CCCU") and The Best Service Co., Inc. ("TBSC") (collectively "the Defendants").  (Doc. No. 1.)  On December 7, 2015, Plaintiff filed a first amended complaint.  (Doc. No. 6.)  The amended complaint alleged that TBSC and CCCU had violated various statutes regulating debt collectors and credit reporting.  On July 28, 2016, Defendants moved for summary judgment.  (Doc. No. 37.)  On August 2, 2016, Plaintiff cross-moved for summary judgment, (Doc. No. 39), and moved to exclude Defendants' expert witness report and testimony, (Doc. No. 41).  Defendants responded on August 18, 2016.  (Doc. No. 42.)  Plaintiff responded on August 22, 2016.  (Doc. No. 43.)  On August 29, 2016, Plaintiff replied to Defendants' response.  (Doc. No. 45.)  On August 26, 2016, the Court found the motions appropriate for resolution without oral argument and submitted them on the papers pursuant to Civil Local Rule 7.1(d)(1).  (Doc. No. 44.)

For the reasons set forth below, the Court grants Defendants' motion for summary judgment as to all claims against TBSC and denies Plaintiff's motion for summary judgment as to the same.  Because the only remaining claim against CCCU is a state law claim, the Court declines to exercise supplemental jurisdiction and dismisses.  Finally, the Court denies Plaintiff's motion to exclude.

## BACKGROUND

On February 1, 2013, Plaintiff opened a checking account with CCCU.  (Doc. No. 37-3 at 6.)  On August 25, 2015, Plaintiff overdrew his account in the amount of $128.15.  (Doc. No. 39-20 at 3.)  Plaintiff did not pay back the overdrawn amount and subsequently CCCU assigned the debt to a collection agency, TBSC.  (Doc. No. 37-3 ¶ 6.)

///

///

///

///

///

3:15-cv-2485-H-JLB

Upon assignment, TBSC sent Plaintiff a letter dated February 4, 2015 with the following information:

| | |
|---|---|
| **Client:** | **CALIFORNIA COAST CREDIT UNION** |
| **Act. Type:** | **DEPOSIT/SAVINGS** |
| **Client Act. #:** | **[XXXXXXX]** |
| **Total Balance:** | **$128.22** |
| **Assigned Bal.:** | **$128.15** |
| **Annual Int. rate:** | **10.00%** |

(Doc. No. 39-4 at 2; Doc. No. 37-3 at 6.)

Plaintiff responded on April 3, 2015 with a letter to TBSC stating "I am disputing the alleged debt, therefore please send me a verification of the alleged debt." (Doc. No. 39-5 at 2.) TBSC received Plaintiff's letter on April 8, 2015 and forwarded it to CCCU, requesting documentation of Plaintiff's debt. (Doc. No. 39-6 at 2-4.) CCCU confirmed receipt of Plaintiff's letter on April 9, 2015 and provided TBSC with documentation of Plaintiff's debt. (Doc. No. 39-7 at 2.)

After receiving documentation of Plaintiff's debt, TBSC responded to Plaintiff's dispute via letter dated April 15, 2015. (Doc. No. 39-8 at 2.) The letter stated "[e]nclosed you will find a copy of the documents that you requested in your dispute and request for validation of the debt. Based on our review of these documents, The Best Service Company, has decided that you owe this debt and that you have no valid reason not to pay it …. We have concluded that your dispute is not valid based on the information that has been provided to us at this time." (Id.)

Plaintiff responded to TBSC's second letter on April 21, 2015, continuing to dispute the debt because the April 15, 2015 letter "D[ID] NOT provide [Plaintiff] details of an agreement which allows [TBSC] to charge interest on the alleged debt." (Doc. No. 39-9 at 2.) (emphasis in original)

TBSC responded via letter dated April 24, 2015 informing Plaintiff it had investigated the dispute and again found it invalid. (Doc. No. 39-10 at 2.) TBSC also

noted "[y]our request for verification asks for information/documentation which is beyond the scope of a proper verification request.  The FDCPA does <u>not</u> require a debt collector to send the items you have requested." (<u>Id.</u>) (emphasis in original).

Following the receipt of Plaintiff's April 21, 2015 letter, TBSC communicated with CCCU at least twice: on November 4, 2015 and November 16, 2015.  (Doc. No. 39-11 at 6:3-10.)  Neither time did TBSC provide CCCU with a copy of Plaintiff's April 21, 2015 letter or expressly mention Plaintiff's continued dispute as it had concluded that the dispute was invalid.  (Doc. No. 39-11 at 6-7; Doc. No. 39-17 at 52:8-17.)

On November 2, 2015, Plaintiff filed suit against Defendants alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal FDCPA"), and California's Consumer Credit Reporting Agencies Act ("CCRAA").  (<u>See generally</u> Doc. No. 1.)  Plaintiff filed an amended complaint on December 7, 2015.  (Doc. No. 6.)

The amended complaint alleges that TBSC violated 15 U.S.C. § 1692e(8) by failing to inform CCCU of Plaintiff's April 21, 2015 letter, violated 15 U.S.C. §§ 1692e(1), (2)(A) by failing to "disclose that the debt was subject to accruing interest," and violated 15 U.S.C. § 1692g(a)(1) by failing to clearly state Plaintiff's debt.  (Doc. No. 6 ¶¶ 2, 26, 28.)  Plaintiff also alleges that TBSC violated the Rosenthal FDCPA for the same reasons.  (Doc. No. 6 ¶¶ 31-35.)

The amended complaint alleges the CCCU violated the Rosenthal FDCPA for incorrectly reporting Plaintiff's debt to the credit bureaus.  (Doc. No. 6 ¶ 39.)   Plaintiff also claims that CCCU's incorrect reporting violated provisions of the CCRAA.  (<u>Id.</u> at ¶¶ 43-48.)

The parties have filed cross motions for summary judgment on all claims.  (Doc. Nos. 37, 39.)  Plaintiff also filed a motion to exclude defendants' expert witness report and testimony.  (Doc. No. 41.)

///

///

3:15-cv-2485-H-JLB

1

**DISCUSSION**

2
**A. Summary Judgment**

3
Summary judgment is proper when a moving party shows there is no genuine

4
dispute of material fact and they are entitled to judgment as a matter of law.  See Fed. R.

5
Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To be "genuine" a dispute

6
must be more than "some metaphysical doubt." Matsushita Elec. Indus. Co., Ltd. V.

7
Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).  There is no

8
genuine dispute if "the record taken as a whole could not lead a rational trier of fact to

9
find for the non-moving party." Id.  A fact is material if it could affect the outcome of

10
the case, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[d]isputes over

11
irrelevant or unnecessary facts will not preclude a grant of summary judgment," T.W.

12
Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

13
The moving party bears the initial burden of producing evidence showing they are

14
entitled to summary judgment.  Celotex Corp., 477 U.S. at 330.  How the moving party

15
satisfies this burden depends on whether they bear the burden of persuasion at trial. Id. at

16
331.  If the moving party bears the burden of persuasion at trial, they must produce

17
credible evidence entitling them to a directed verdict if uncontroverted. Id.  If the non-

18
moving party bears the burden of persuasion at trial the moving party may satisfy their

19
burden either by (1) producing evidence that negates an essential element of the non-

20
moving party's claim or (2) demonstrating that the nonmoving party's evidence is

21
insufficient to establish an essential element of the nonmoving party's claim. Id.

22
If the moving party satisfies their initial burden, then the burden shifts to the

23
nonmoving party to introduce evidence showing there is a genuine dispute of material

24
fact. Id. at 331; see also T.W. Elec. Serv., Inc., 809 F.2d at 630.  To satisfy its burden,

25
the non-moving party "may not rest upon mere allegations or denials of his pleadings."

26
Anderson, 477 U.S. at 256.  Rather, the nonmoving party "must present affirmative

27
evidence . . . from which a jury might return a verdict in his favor." Id.

28
///

### B. Claims Against TBSC

Plaintiff alleges that TBSC violated provisions of the FDCPA and the Rosenthal FDCPA.  The allegations center on whether TBSC's February 4, 2015 letter to Plaintiff was deceptive or misleading.  The Court concludes it was not.

#### 1. FDCPA Claims

The FDCPA is a "broad remedial statute designed to eliminate abusive debt collection practice by debt collectors, to ensure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Gonzalez v. Arrow Financial Services, LLC, 660 F.3d 1055, 1060-61 (9th Cir. 2011) (internal quotation marks omitted).  In accordance with this remedial nature, the FDCPA is a strict liability statute, id. at 1061, and should be "construed liberally in favor of the consumer," Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1176 (9th Cir. 2006) (quoting Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002)).

To prevail under the FDCPA, Plaintiff must show (1) Plaintiff is the subject of consumer debt-collection activity; (2) Defendant is a debt collector; and (3) Defendant engaged in conduct prohibited by the FDCPA.  It is undisputed that the first two elements have been met.  (See Doc. No. 37-1 at 5.)  Thus the only remaining question is whether TBSC engaged in conduct prohibited by the FDCPA.  Plaintiff alleges that TBSC's conduct violated sections 1692e and 1692g of FDCPA.

#### 1. Section 1692e

Section 1692e "broadly prohibits the use of any 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Gonzalez, 660 F.3d at 1061 (quoting 15 U.S.C. § 1692e).  In addition to this broad prohibition, § 1692e provides a non-exhaustive list of sixteen practices that are false, deceptive, or misleading. See 15 U.S.C. §§ 1692e(1)-1692e(16).  In the Ninth Circuit, whether a debt collector is liable under § 1692e is a question of law and courts use an objective analysis that asks whether the "least sophisticated debtor would likely be misled by a communication."

<u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1030 (9th Cir. 2010); <u>see also</u>
<u>Tourgeman v. Collins Fin. Servs., Inc.</u>, 755 F.3d 1109, 1119 (9th Cir. 2014).  The least
sophisticated debtor "may be uniformed, naïve, and gullible"; thus the standard is lower
than a mere reasonableness standard.  <u>Evon v. Law Offices of Sidney Mickell</u>, 688 F.3d
1015, 1027 (9th Cir. 2012).  But the least sophisticated debtor is presumed to have "a
basic level of understanding and willingness to read with care" and cannot reach "bizarre
or unreasonable" interpretations.  <u>Id.</u> (citing <u>Campuzano-Burgoz v. Midland Credit</u>
<u>Mgmt., Inc.</u>, 550 F.3d 294, 298 (3rd Cir. 2008) ("[T]he least sophisticated standard
safeguards bill collectors from liability for bizarre or idiosyncratic interpretations of
collection notices' by preserving at least a modicum of reasonableness") (internal
quotation marks omitted)).

       Defendants argue that the least sophisticated debtor standard should not apply in
this case because Plaintiff is particularly sophisticated.  (Doc. No. 37-1 at 23-24.)  On his
application for an account with CCCU Plaintiff listed his employment as "lead teller" at
Wells Fargo.  (Doc. No. 37-2 at 5.)  The Court acknowledges Plaintiff's sophistication
but the law is clear that the least sophisticated debtor standard is an objective standard.
<u>Donohue</u>, 592 F.3d at 1030.

       The Ninth Circuit also incorporates a materiality requirement into the § 1692e
analysis.  <u>Davis v. Hollins Law</u>, No. 14-16437, 5 (9th Cir. August 8, 2016) ("[A]ny error
in a debt collectors' communications must be material in order to be actionable under §
1692e.")  Immaterial errors are those that "would not frustrate a debtor's ability to
intelligently choose an appropriate response to a collection effort."  <u>Id.</u>  Thus, "[m]ere
technical errors that deceive no one do not give rise to liability under the FDCPA."  <u>Id.</u>

### i. 1692e(8)

       Plaintiff first contends that TBSC violated § 1692e(8) by failing to expressly
inform CCCU that Plaintiff was continuing to dispute the debt after TBSC received
Plaintiff's April 21, 2015 letter.  Section 1692e(8) prohibits debt collectors from
"[c]ommunicating or threatening to communicate to any person credit information which

is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).  A plain meaning reading of the statute prohibits debt collectors from making deceiving communications to third parties and acknowledges that failing to appraise the third party of the debtor's dispute can be deceiving.  See Moscona v. California Business Bureau, Inc., 2011 WL 5085522 at *4-5 (S.D. Cal. 2011).  If, however, the creditor was already appraised of the debtor's dispute a failure to re-appraise them is not deceitful.  The creditor is already on notice of the dispute and the silence, if anything, implies status quo.  Here, the parties agree that TBSC initially communicated to CCCU that Plaintiff was disputing his debt.  (Doc. No. 39-1 at 16:17-18; see also Doc. No. 37-3 at 6.)  Thus, there was no deceit when TBSC later discussed the status of Plaintiff's debt with CCCU without appraising them of Plaintiff's second letter that was substantively identical to the first.[1]  Nothing in § 1692e(8), or the cases Plaintiff cites, supports Plaintiff's proposed rigid rule requiring that every time a debt collector communicates with a third party it must expressly re-appraise them of a continuing debtor dispute.

In so holding, the Court takes guidance from the Ninth Circuit's recent decision in Davis.  There, the Ninth Circuit held that prior communications are relevant to whether a debt collector complies with § 1692e.  Davis, No. 14-16437.  In Davis the court was interpreting § 1692e(11) that requires debt collectors "disclose in subsequent communications [with debtors] that the communication is from a debt collector.  15 U.S.C. § 1692e(11).  The Davis debt collector and debtor had already "been involved in settlement negotiations for about a two week period" when the debt collector left the

---

[1] Plaintiff argues that the failure to re-appraise CCCU was deceitful because the re-appraisal would have caused CCCU to report the debt as disputed when they reported it to the credit bureaus.  Whether a communication is misleading is a question of law, determined by an objective standard.  See Gonzalez, 660 F.3d at 1061.  CCCU had knowledge of Plaintiff's dispute, see Moscona, 2011 WL 5085522 at *5 ("That Plaintiff requested validation under 15 U.S.C. § 1692g necessarily indicated that the debt was disputed."), and TBSC reasonably relied on the historical context of the file when communicating with CCCU.

8

debtor a voicemail.  <u>Davis</u>, No. 14-16437 at 11.  The voicemail stated it was from "Gregory at Hollins Law" but failed to remind the debtor that Hollins Law was the debt collector.  <u>Id.</u>  Debtor sued the debt collector claiming the debt collector had violated § 1692e(11) because they were obligated to expressly disclose that the call was from a debt collector in every single communication.  <u>Id.</u>  The court ruled in favor of the debt collector, however, holding that "[g]iven the context, the call was not false, deceptive, or misleading."  <u>Id.</u> (internal quotation marks omitted).  As in <u>Davis</u>, TBSC's communication with CCCU was not false, deceptive, or misleading because, given the context, CCCU was aware of Plaintiff's dispute.

The Court also rejects Plaintiff's new theory of liability under § 1692e(8).  (Doc. No. 39-1 at 17-18.)  In Plaintiff's Equifax credit report TBSC reported Plaintiff's first day of delinquency as October 2014 while CCCU reported it as August 2014.  Plaintiff claims the facts establish that the earlier date is proper and, thus, TBSC violated § 1692e(8).

But Plaintiff has not shown good cause to present a new theory at this late date. Generally, parties may amend the pleadings by leave of the court and leave is to be "freely given when justice so requires."  <u>See</u> Fed. R. Civ. P. 15.  However, once the court has entered a scheduling order this liberal policy no longer applies and parties must show "good cause" to amend the pleadings outside the time limits in the scheduling order. <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1294 (9th Cir. 2000), *cert. denied*, 533 U.S. 950 (2001) ("the district court correctly found that it should address the issue under Federal Rule of Civil Procedure 16 because it had filed a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline had expired"). Moreover, Plaintiff fails to explain his undue delay in raising his theory under § 1692e(8).  Plaintiff claims to have discovered the discrepancy in delinquency dates "on his June 7, 2015 Equifax credit report."  (Doc. No. 39-1 at 17.)  Plaintiff fails, however, to explain why he had not requested his Equifax credit report at the outset of the litigation or, if he had requested it, why he would not have discovered the discrepancy at that time. Furthermore, Plaintiff fails to explain why this discrepancy in delinquency dates was not

discovered from the other credit reports Plaintiff has admitted to checking.  (E.g., Doc. No. 39-12.)  Plaintiff's argument that they only recently confirmed the actual date of delinquency, (Doc. No. 39-1 at 17), is also unavailing.  Because the Plaintiff was the one to default on his debt, he is in the best position to know the delinquency date and needs no confirmation to plead it.  Because the discrepancies in delinquency dates could have been discovered since the outset of litigation and the date of delinquency was known to Plaintiff, the Court declines to find good cause for the new theory.  Coleman, 232 F.3d at 1294.

Plaintiff argues that there is no prejudice to Defendants because "the facts are undisputed and no discovery needed."  (Id.)  But this is incorrect.  First, § 1692e(8) only prohibits communications of information "known or which should be known to be false."  15 U.S.C. § 1692e(8).  Plaintiff's motion for summary judgment fails to identify undisputed facts that would establish this element of the violation.  As a result, the new theory fails on the merits.  Second, defendants often raise bona fide error defenses to these types of reporting errors which require discovery of their "maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k.  Defendants have not had the opportunity to develop these factual areas and thus would be prejudiced by allowing Plaintiff to add this claim in the midst of summary judgment motions after discovery has closed.  Coleman, 232 F.3d at 1292.

Finally, Plaintiff has previously attempted to amend his complaint but did not raise this new claim at that time—despite being aware of their newly discovered facts.  On June 27, 2016, Plaintiff moved for leave to file a second amended complaint.  (Doc. No. 30.)  Plaintiff sought to add two new claims related to the amount of debt reported to the credit bureaus by TBSC.  (Doc. No. 30-1 at 5-6.)  The Court denied the motion because Plaintiff did not explain his delay in seeking the credit reports and because the amendment would be futile.  (Doc. No. 36.)  When Plaintiff filed his motion for leave to file a second amended complaint he was, or should have been, in possession of the June 7, 2015 Equifax report and has failed to explain why he did not raise the

delinquency date issue then.

Because Plaintiff's claim fails on the merits and is procedurally defective, the Court grants summary judgment to TBSC on the FDCPA claim.

### ii.  1692e(10)

Plaintiff claims that TBSC violated § 1692e(10) by failing to disclose that Plaintiff's debt was accruing interest in TBSC's February 4, 2015 communication.  (Doc. No. 6 ¶ 27.)  Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  This section of § 1692e is commonly referred to as the "catchall" provision "and can be violated in any number of novel ways."  Gonzalez, 660 F.3d at 1062.  A debt collection letter will be found deceptive if the least sophisticated debtor could read it to have "two or more different meanings, one of which is inaccurate."  Id. (internal quotation marks omitted).  However, the debtor's interpretations cannot be bizarre or idiosyncratic.  Evon, 688 F.3d at 1027.

Plaintiff claims the February 4, 2015 communication is deceptive because the least sophisticated debtor would think that paying the amount stated in the notice would pay off the debt in full without accrued interest.  (Doc. No. 39-1 at 20.)  The Court disagrees.

Plaintiff's interpretation of the February 4, 2015 letter is idiosyncratic because the letter would have put the least sophisticated debtor on notice that the debt was subject to interest and that interest was already accruing.  The letter clearly states "Annual Int. rate: 10.00%."  (Doc. No. 39-4 at 2.)  Given a "basic level of understanding and willingness to read with care," Evon, 688 F.3d at 1027, the least sophisticated debtor would be able understand that her balance was not static.  Furthermore, after carefully reading the letter, the least sophisticated debtor would see that the "Assigned Bal." was lower than the "Total Balance."  (Doc. No. 39-4 at 2.)  The fact that the balance changed after having been assigned to TBSC would confirm the least sophisticated debtor's reading of the annual interest rate and show that the interest was accruing while TBSC attempted to collect it.

Plaintiff similarly tries to argue that the February 4, 2015 letter is misleading and deceptive because the least sophisticated debtor could conclude that the amount stated in the notice is due at any time and not as of a specific due date.  (Doc. No. 39-1 at 22.)  The least sophisticated debtor would have known that the balance was subject to an interest rate and that interest had been accruing while TBSC attempted to collect the debt.  (See Doc. No. 39-4 at 2.)  As such, an interpretation that assumed the interest stopped accruing just because TBSC had sent Plaintiff a letter defies logic.  Similarly, Plaintiff has offered no evidence to show the least sophisticated debtor would think a date other than the date on the letter was the as of date.  See Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 415 (7th Cir. 2005) ("Requiring extrinsic evidence of situations such as this is not inconsistent with the unsophisticated-debtor standard; rather, such evidence is an essential component of the standard.  It ensures that unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters do not prevail.").  As a result, TBSC's notice was not misleading or deceptive.

Finally, Plaintiff argues the February 4, 2015 letter is misleading and deceptive because the least sophisticated debtor "could conclude that the amount of interest stated in the notice is the only interest defendant TBSC is collecting."  (Doc. No. 39-1 at 24.)  The least sophisticated debtor would have understood that, as of the date the letter was drafted, the total balance was $128.22 and subject to change because interest was accruing.

Because the least sophisticated debtor would not have been misled or deceived by the illogical interpretations Plaintiff proposes, TBSC's February 4, 2015 letter did not violate § 1692e(10).

### iii.   1692e(2)(A)

Plaintiff alleges that TBSC violated § 1692e(2)(A) for similar reasons as § 1692e(10).  Section 1692e(2)(A) makes it a violation of the FDCPA to falsely represent "(A) the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A). Plaintiff's only argument is that the TBSC violated this provision because "it failed to

1    disclose to the least sophisticated debtor that the debt was subject to accruing interest."

2    (Do. No. 39-1 at 25.)  As explained above, this is incorrect.  The least sophisticated

3    debtor has "a basic level of understanding and willingness to read with care," <u>Evon</u>, 688

4    F.3d at 1027, and thus would have understood that their account was accruing interest.

5    As such, TBSC's February 4, 2015 letter did not violate § 1692e(2)(A).

6                          **b.  Section 1692g**

7         Section 1692g(a) requires debt collectors send consumers a written notice

8    containing certain specified information within five days of the initial communication

9    between debtor and debt collector.  15 U.S.C. § 1692g(a).  This written notice must

10   include the "(1) the amount of the debt."  <u>Id.</u>  This requires debt collectors "state the total

11   amount due—interest and other charges as well as principle—on the date the [collection]

12   letter was sent."  <u>Dupuy v. Weltman, Wienberg & Reis Co.</u>, 442 F.Supp.2d 822, 827

13   (N.D. Cal. 2006) (citing <u>Miller v. McCalla</u>, 214 F.3d 870, 875 (7th Cir. 2000)).  Put

14   another way, it must be clearly stated such that a least sophisticated debtor is likely to

15   understand.  <u>Id.</u>

16        Plaintiff's arguments that TBSC violated § 1692g(a)(1) mirror those arguments the

17   Court rejects as to § 1692e.  First, Plaintiff claims that "without the disclosure of accruing

18   interest, the least sophisticated debtor would attribute no need for urgency to pay the

19   debt.  (Doc. No. 39-1 at 26.)  Second, the February 4, 2015 letter "did not identify the

20   date as of which payment of $128.22 would suffice to pay the debt in full."  (Doc. No.

21   39-1 at 27.)  Finally, TBSC "failed to include language informing the least sophisticated

22   debtor that the amount of the debt, here $128.22, may increase by the time Plaintiff

23   choses [sic] to pay."  (Doc. No. 39-1 at 28.)  The first argument fails because it rests on a

24   proposition the Court already rejected—the letter does disclose that interest is accruing to

25   the least sophisticated debtor.  The second argument fails as well because the least

26   sophisticated debtor would have understood that the date clearly printed on the letter,

27   February 4, 2015, was the date as of the demand.  This information, combined with the

28   knowledge of accruing interest, would have signaled to the least sophisticated debtor that

the balance would change over time.  As such, Plaintiff's third argument fails.

Plaintiff cites to two Seventh Circuit cases, <u>Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.</u>, 214 F.3d 872 (7th Cir. 2000), and <u>Chuway v. National Action Financial Services, Inc.</u>, 362 F.3d 944 (7th Cir. 2004), which discuss a proposal for "safe harbor" language debt collectors could use to inform a debtor that the balance is subject to accruing interest.  But the Court rejects the rigid requirement that a debt collector must use this additional language.  <u>See</u> <u>Miller</u>, 214 F.3d at 876 ("Of course we do not hold that a debt collector *must* use this form of words to avoid violating the statute") (emphasis in original).

Plaintiff also claims that California district courts have adopted "the reasoning of <u>Miller</u>" but those two cases are factually distinct from this case.  In <u>Welker v. Law Office of Daniel J. Horwitz</u>, 699 F.Supp.2d 1164 (S.D. Cal. 2010), the written notice to the debtor demanded payment of the "outstanding balance, interest at the legal rate, and reimbursement of court costs" but only informed the debtor of the "principal amount of the claim." <u>Id.</u> at 1169.  The court held this was insufficient because it failed to disclose how much interest was being asked for. <u>Id.</u>  Here, in contrast, Plaintiff was told the interest rate and the interest due was included in the "Total Balance."

<u>Dupuy v. Weltman, Wienberg & Reis Co.</u>, 442 F.Supp.2d 822 (N.D. Cal. 2006), is similarly distinguishable.  There, the debt collector's letter included a "Balance Due" amount and noted the amount might change "if interest is accruing." <u>Id.</u> at 827.  But in that case, the letter failed to clarify whether interest was actually accruing or the rate of interest.  Because the case was at the motion to dismiss stage, and the facts did not establish whether interest was accruing, the court denied defendant's motion to dismiss. Here, TBSC's letter did not equivocate about whether interest was due, the rate, or the amount of interest due as of the date of the letter.  In sum, the Court grants summary judgment in favor of defendant TBSC on the FDCPA claims.

///

///

### 2.  Rosenthal FDCA Claims

California adopted a state version of the FDCPA, known as the Rosenthal FDCPA. See Cal. Civ. Code § 1788 et seq.  The Rosenthal FDCPA "mimics or incorporates by reference the FDCPA's requirements" and, thus, "whether a validation notice violates the Rosenthal Act turns on whether it violates the FDCPA." Riggs v. Prober & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012).  Plaintiff's Rosenthal FDCPA claims are derivative of his FDCPA claims.  (Doc. No. 6 at ¶¶ 31-33.)  Because Plaintiff's FDCPA claims fail, so do his Rosenthal FDCPA claims.  See Davis, No. 14-16437 at 9, fn. 3 ("Because the state law claim is derivative of the federal claims, we do not address it separately.").  As a result, the Court grants summary judgment in favor of TBSC on Defendant's Rosenthal FDCPA claims.

### C. Claims Against CCCU

Plaintiff alleges that CCCU violated the Rosenthal FDCPA and the California Consumer Credit Reporting Agencies Act ("CCRAA").  Because the Court previously dismissed Plaintiff's Rosenthal FDCPA claims against CCCU, and the only remaining claim against CCCU is based on California state law, the Court declines to exercise supplemental jurisdiction and dismisses the CCRAA claim.

For the Rosenthal FDCPA claims, the Court agrees with the Defendants that the Court previously dismissed the Rosenthal FDCPA claim in its order on the motion to dismiss.  (See Doc. No. 16).  Not only did Plaintiff stipulate to dismiss Count 2 of the Rosenthal FDCPA claim, but Defendants also challenged the legal sufficiency of all of Plaintiff's Rosenthal Act claims, and the Court agreed with Defendants.  (See Doc. No. 16.)

For the remaining CCRAA claim, federal courts are courts of limited jurisdiction. McCormick v. Sullivant, 23 U.S. 192, 195 (1825) ("The courts of the United States are all Courts of limited jurisdiction.").  Most commonly, district courts will hear cases involving either a federal question, 28 U.S.C. § 1331, or diverse parties, 28 U.S.C. § 1332.  When jurisdiction is invoked under §§ 1331-32 courts also have supplemental

jurisdiction to hear "all other claims that are so related … they form part of the same case or controversy."  28 U.S.C. 1367.  Supplemental jurisdiction over state law claims, however, is discretionary.  See id.  "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction" and the Ninth Circuit has instructed that district courts "should" do so.  Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989) ("When, as here, the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice."); accord United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  Thus, having decided all of the federal questions in this case, the Court declines to address the remaining state law claim and dismisses it without prejudice.[2]

///

///

///

///

///

///

///

///

///

---

[2] The court notes that Defendants' argument that the CCRAA is preempted by the FCRA is incorrect. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1172-73 (9th Cir. 2009) ("Because the plain language of the preemption provision does not apply to private rights of action, and because the likely purpose of the express exclusion was precisely to permit private enforcement of these provisions, we hold that the private right of action to enforce California Civil Code section 1785.25(a) is not preempted by the FCRA.").

1

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to the claims against TBSC and CCCU except for the California CCRAA claim, (Doc. No. 37), and denies Plaintiff's cross-motion for summary judgment, (Doc. No. 39).  Exercising its discretion, the Court declines to exercise supplemental jurisdiction over the remaining California state law claim against CCCU and dismisses the CCRAA claim without prejudice.  Finally, the Court denies as moot Plaintiff's motion to exclude the expert report and testimony of Defendant's expert.  (Doc. No. 41.)

**IT IS SO ORDERED.**

DATED: September 12, 2016

_____

MARILYN L. HUFF, District Judge

UNITED STATES DISTRICT COURT